## Case No. 10,286.

### NOE v. UNITED STATES.

[Hoff. Land Cas. 242.] [1]

District Court, D. California. June Term, 1857.

#### APPEAL—AFTER EXPIRATION OF TERM.

An appeal will be granted on application made after the expiration of the term at which the decree was rendered; the objection that the court has no power in the premises being one that should be determined by the supreme court.

[This was a suit by James Noé, claiming the island of Sacramento, at the first hearing of which the claim was sustained. Case No. 10,285.] Heard on application for an order granting an appeal in behalf of the United States.

P. Della Torre, U. S. Atty., for the order.
Calhoun Benham, against it.

HOFFMAN, District Judge. An appeal is asked for in this case by the district attorney. The application is opposed on the ground that the court has no power to grant an appeal after the expiration of the term at which the decree has been rendered. The question raised is important, for it is understood that there are several cases in which decrees were rendered during the last term, and in which no appeal was taken during that term. By the act of 1851 [9 Stat. 633], no period is expressly mentioned within which the appeal must be taken. The language of the tenth section is: "The district court shall proceed to render judgment, and shall, on the application of the party against whom judgment is rendered, grant an appeal to the supreme

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

court." It is contended that the word "appeal" imports ex vi termini a proceeding taken sedente curiâ, or during the session of the court at which the decree appealed from is rendered. It was early decided by the supreme court that the term "appeal," in the judiciary act of 1789 [1 Stat. 73], must be understood in its technical sense, expressive of the civil law mode of removing a cause to a higher tribunal, and not in its popular sense as descriptive of appellate jurisdiction, without regard to the manner in which the cause is transmitted to that jurisdiction. [U. S. v. Goodwin] 7 Cranch [11 U. S.] 108, 387; [Gelston v. Hoyt] 3 Wheat. [15 U. S.] 246. The term "appeal" is undoubtedly used in the same sense in the act of 1851, and denotes the civil law mode of transferring a cause to a superior tribunal for a retrial of the matters of fact as well as of law, as distinguished from a writ of error by which errors in matters of law were alone submitted for revision. The question then arises, whether an "appeal," according to the import of the term in the civil law as it is used in the proceedings of the courts in England and the United States, whose practice is based upon the rules of the civil law, or as used in the acts of congress, necessarily denotes a proceeding to be taken in open court, and during the term at which the decree appealed from is rendered. By the Roman law, up to the time of Justinian, appeals viva voce were allowable on the day the sentence was pronounced. Cod. de Appell. 7, 62, 14; Dig. 49, 1, 2. A little more time was given for an appeal in writing. According to Ulpian (Dig. 49, 1, 2, § 11), two days were allowed to one acting in his own cause, three days to one acting in a representative capacity, such as tutor, curator, &c. But various impediments or excuses were received to mitigate the rigor of this prescription. Justinian in his twenty-third novel (cap. 1), after alluding to the evils of this short and double period, enacts that in all cases a delay of ten days should be given, to be computed from the reading of the sentence. Such appears to have been the law of Spain, though the time was subsequently restricted to five days. Nov. Recop. lib. 11, tit. 20, law 1. By the practice of the ecclesiastical and admiralty courts in England, appeals from a definitive sentence may be either "apud acta" at the time of the sentence, viva voce, in presence of the judge, or in scriptis, reduced to writing, within ten (or in the ecclesiastical courts fifteen) days before a notary. In appeals from the high court of chancery to the house of lords, the first step is a notice of appeal; the next, a petition of appeal, which is presented to the lords, and on which a summons issues to the respondent. These petitions of appeal are by statute limited to five years. By the acts of congress, appeals are made subject to the same rules, regulations and restrictions as are prescribed by law in cases of writs of error. These rules were decided by the supreme court in the case of The San Pedro, 2 Wheat. [15 U. S.] 132, to be those contained in the twenty-second and twenty-third sections of the act of 1789, and they relate to the time within which a writ of error may be brought—when it shall operate as a supersedeas—the citation to the adverse party—the security, &c. All these regulations are, in the opinion of the supreme court, applicable to appeals under the act of 1803 [2 Stat. 244], and are to be substantially observed. In analogy, then, to the practice in writs of error, a copy of the appeal is served upon the adverse party by lodging it in the clerk's office, and a citation is served upon him as required by the twenty-second and twenty-third sections of the act of 1789. The supreme court have recognized, however, the practice of taking an appeal in open court, or entering it during the session of the court at which the decree appealed from is pronounced. In such case the personal citation is held not to be indispensable. Riley v. Lamar, 2 Cranch [6 U. S.] 344. And perhaps the service of the notice of appeal would be held to be unnecessary for the same reason. It thus appears that although originally appeals may have been taken in open court, yet by the practice of all courts proceeding according to the forms of civil law the appeal may be taken out of court in different modes prescribed by law or by the rules of court. That the time within which they are to be taken is in like manner expressly limited, but it in no case refers to the terms of the court pronouncing the decree—the distinction between term time and vacation being, so far as I am informed, wholly unknown to the civil law. Although the mode of appealing "in scriptis," or before a notary, is not admissible in our practice, yet another mode of effecting the same object by a proceeding out of court is authorized by statute; and we have seen that in the ecclesiastical and admiralty courts of England that manner of taking appeals is still allowed. There would seem, therefore, no ground for the idea that an appeal means, ex vi termini, a proceeding in open court to be taken of necessity during the term at which the decree is pronounced. Two decisions of Judge Story have been cited by the counsel for the claimants in support of this position: Norton v. Rich [Case No. 10,352], and The New England [Id. 10,151]. It appears to me that those cases corroborate the views above expressed.

The judiciary act of 1789 directed that appeals from the district court should be taken to the "next circuit court." It provided no mode of taking the appeals. The case was therefore supposed by Judge Story to be untouched by statute. Whether the provisions of the act of 1803 do not apply to appeals from the district to the circuit court as well as to those from the latter to the supreme court, may admit of doubt. The provisions of the act of 1803 do not seem to have been brought to the notice of Judge Story. But

assuming that the law makes no provision whatever on the subject, except to allow the naked right of appeal to the next circuit court, the case presented to Judge Story does not materially differ from that submitted to this court. If, therefore, the word "appeal" necessarily imparted a proceeding sedente curia and viva voce, he would have determined that no appeal could be taken in any other manner. But such is not his decision. On the contrary, he states that the district courts may require the appeals to be taken either sedente curia and before an adjournment sine die, or afterwards, within a fixed time, in the clerk's office. As in the Massachusetts district no rules as to appeals had been established, but the uniform course from the earliest period had been to take appeals in open court before the adjournment, this practice was considered equivalent to a rule, and obligatory upon all parties. The case of The New England, so far as it relates to the point under discussion, affirms the decision of Norton v. Rich [supra], and avowedly proceeds on its authority. It is evident that in these cases appeals were required to be taken sedente curiâ and before adjournment, solely because the rules of court, or a long continued and uniform practice equivalent to a rule, had so provided; and not because the right of appeal conferred by statute imported such a proceeding and none other. Had such been Judge Story's construction of the term, he would not have admitted the power of the court to enlarge or abridge the right. The one hundred and fifty-second rule of the district court for the Southern district of New York, affirms the same principle. That rule provides that appeals may be entered within ten days from the time of rendering the decree. "A brief notice in writing, to the clerk and opposite proctor, that the party appeals in the cause, shall be a sufficient entry of the appeal, without any petition to the court for leave to enter the same." Under this rule, appeals are entered in the clerk's office within the time limited, but wholly without regard to the adjournment of the court; and the practice of taking an appeal in open court at any time before its adjournment has fallen into disuse, if, indeed, it be any longer admissible. I think it clear that the term "appeal," according to the practice of all the courts proceeding according to the forms of the civil law, has no such meaning as that attributed to it in the argument. But even if this were doubtful, the question would still arise, whether congress intended to use it in the act of 1851 in any such limited and doubtful sense. Had the intention of congress been to prescribe a period shorter than that allowed by the general laws regulating appeals, some limitation would probably have been fixed as in the acts of 1824 and 1828, by the first of which twelve months and by the second four months were allowed. They would hardly have left the limitation to be inferred from the use of the word "appeal" in a sense different from that in which it is elsewhere used in legislation, and when the period thus allowed would vary from six months to a few moments, depending upon whether the decree was rendered at the beginning or the end of the term. It seems far more probable that congress used the term as it is known in the acts of congress, and as importing a proceeding to be taken within five years from the date of the decree. Such a limitation would no doubt be applied should the case arise, and very possibly the court, in the absence of express regulations on the subject, would be authorized to fix by its rules a reasonable period within which the appeal is to be taken, as has been done by the district courts sitting in admiralty in cases of appeal to the circuit court, which are in like manner unprovided for by statute. No such rules have, however, been established by this court, the practice having been to grant the appeal whenever moved for. The objection we have considered has only recently been raised, and if suffered to prevail would operate as a surprise upon the United States, as well as upon claimants who, in ignorance of any such implied limitation on the right of appeal, have omitted to move for it before the expiration of the term at which the decree was rendered. For the reasons above stated, we think the objection cannot be sustained. It may be observed in conclusion, that the question presented is in its own nature more fit for the consideration of the superior tribunal to which an appeal is sought, than for that of the inferior court from which an appeal is taken. A preliminary motion to dismiss the appeal as irregularly taken may be made before the supreme court, and the question finally determined; whereas, a refusal by this court to allow the appeal would involve the delay of a mandamus to this court, until the return of which the decision of the point would necessarily be deferred.